514 N.E.2d 618 (1987)
In re the MATTER OF the GUARDIANSHIP of Billy Joe Lesley Thompson.
Charles Wayne Thompson and Gay Lynn Thompson, Appellant (Respondent below),
v.
JOHN JOSEPH GORMAN RITA MARIE GORMAN, Appellee (Petitioner below).
No. 45S03-8710-CV-979.
Supreme Court of Indiana.
October 28, 1987.
James E. Foster, Funk & Foster, Hammond, for appellant.
Jeffrey J. Dywan, Chudom & Meyer, Schererville, for appellee.

ON PETITION TO TRANSFER
PIVARNIK, Justice.
This cause comes to us on a Petition to Transfer from the Fourth District Court of Appeals brought by John and Rita Gorman. The facts necessary for resolution of this issue were set out by the Court of Appeals as follows:
"Billy Joe Lesley Thompson is an infant female born December 31, 1982. Charles and Gay Lynn Thompson, residents of Texas, took custody of one year old Billy Joe from her natural mother who had neglected her. The Thompsons had Billy Joe for approximately seven months and initiated adoption proceedings. The social worker assigned by the Texas court to investigate the Thompson's fitness made eight to ten home visits, found the Thompsons fit, and recommended adoption. A few weeks before the final adoption hearing, several anonymous complaints were made to the Texas Department of Human Resources (Welfare Department) regarding the possible neglect or abuse of Billy Joe by the Thompsons, and the Welfare Department assigned a second social worker, Sharon Mills, to investigate. Mills made two home visits and states in her deposition that Billy Joe appeared to be healthy and normal and that she saw no evidence of abuse of Billy Joe. She did observe a carpet burn on the child's knee. Also, she noticed a lack of eye contact between Mrs. Thompson and Billy Joe while the of eye contact to be disturbing. Mills contacted Billy Joe's physician who stated the child had received regular and adequate medical care while with the Thompsons, and he had seen no evidence of neglect or abuse. On Mills' second visit she told Mr. Thompson she intended to keep the child abuse file open and if she saw any wrongdoing under Texas law, she would have Billy Joe and the Thompsons' two sons taken out of the home and placed in foster care. The Thompsons became upset about the Welfare Department investigation and feared the loss of all three of their children *619 and the destruction of their marriage. They consulted their attorney, J.A. Wishnew, and expressed their fears and emotional upset regarding the investigation and their last minute hesitation to go through with the adoption. Wishnew, a Texas attorney who was also a brother-in-law of Mrs. Gorman, convinced the Thompsons that if they reneged on the adoption, Billy Joe would be placed in the custody of the Welfare Department and perhaps returned to her natural mother, who had mistreated Billy Joe. He urged the Thompsons to go through with the final adoption and turn the child over to the Gormans, an Indiana couple who wanted a child. Rita and John Gorman, both of whom had been divorced from their first spouses, were married on December 9, 1983, eight months before the Texas adoption proceedings. At the time of the Thompsons' final adoption hearing, Mr. Gorman was working as a patrolman for the Whiting City Police Department and Mrs. Gorman was employed as a beautician.
Mrs. Gorman hurried to Texas from her home in Indiana to stay in the Thompson's home for two days before the adoption and attended the final adoption hearing. With regard to the parties conduct at the Texas adoption hearing, Lawyer Wishnew was candid and testified:
`While we went through the hearing down in Meridian, Bosque County, Rita [Gorman] held the child I believe in the back corner by the clerk's office, held the child while they went through the prerequisites, the jurisdictional statements as to residence, best interest, well, they reserved the right for the inheritance; they went through all the things that we needed to swear to, and while the ad litem made his testimony, elicited his testimony.' (Emphasis added.) (R.P. 258).
The Thompsons gave custody of Billy Joe to Mrs. Gorman and executed their consent for the Gormans to adopt her in Wishnew's office immediately following the hearing. Mrs. Gorman returned to Indiana with Billy Joe.
The Thompsons paid Wishnew fees of nearly $2,000 for the adoption. In the next few months, the Thompsons' finances became strained and they approached Wishnew for return of the fees they paid to adopt Billy Joe. Wishnew testified here that Mr. Thompson demanded the return of Billy Joe or the payment of $5,000.00. Thompson admits asking Wishnew for money but denies he asked for $5,000.00, or that he attempted to blackmail Wishnew. Wishnew refused to pay and refused to return Billy Joe. The Thompsons withdrew their consent to adopt, as permitted by Texas law, and complained to the Texas court about Wishnew's conduct. The trial judge in Texas reported their complaint to the Texas Disciplinary Board.
The Thompsons demanded return of Billy Joe. The Gormans refused and initiated adoption proceedings in Indiana... ."
Thompson v. Gorman (1986), Ind. App., 502 N.E.2d 916, 917-18.
The Thompsons came to Indiana and successfully contested the adoption. The Gormans then filed a petition for guardianship of Billy Joe which was granted by the trial court. The Thompsons appealed the appointment of the Gormans as guardians over Billy Joe, arguing guardianship proceedings are not appropriate because the juvenile code preempts the guardianship statute when the potential effect of the proceedings is to terminate rights and authority over the child. The Court of Appeals agreed with the Thompsons and found this to be in reality a CHINS (child in need of services) proceeding over which juvenile court has exclusive jurisdiction pursuant to Ind. Code § 31-6-2-1(a)(2). The Court of Appeals concluded that the issue of whether a child's parent is adequately performing his duties must be litigated under the juvenile law and found guardianship proceedings are inappropriate to determine care and custody of a minor child between out-of-state parents and third party residents. They remanded the cause to the trial court with instructions to transfer the cause to a court of appropriate *620 juvenile jurisdiction. We recognize this as an issue which requires clarification by this Court and accordingly vacate the opinion of the Court of Appeals and affirm the trial court.
Certain pertinent facts are not in dispute. No CHINS proceeding was filed here by either the prosecuting attorney or the welfare attorney. The county welfare department was not a party to the action. Further, this was not a proceeding to terminate Thompson's parental rights pursuant to the juvenile code, Ind. Code §§ 31-6-5-1 to -6. This was an action for appointment of a temporary guardian, brought pursuant to the probate code, Ind. Code §§ 29-1-18-1 to -52. The judgment of the trial court clearly indicates it was entered as a temporary guardianship on a showing that the ward was in need of protection of its interest because of its current circumstances. The trial court found that "based upon the evidence as submitted in open court, a guardianship for the said minor is desirable to protect the interest of the minor." The trial court also found that "considering all the evidence introduced at the hearing herein, the petitioners, John Joseph Gorman and Rita Marie Gorman, are the persons most suitable of the persons available at this time to act as guardians of the person of the minor." The trial court then appointed the Gormans guardians of Billy Joe and further ordered that they report to the court monthly as to the status of their pending adoption petition.
The pertinent portion of the probate code on which this action is based provides:
4(a). Except as provided in subsection (b), the jurisdiction of the court having probate jurisdiction over all matters of guardianship, other than guardianships ad litem, shall be exclusive, subject to the right of appeal. All forms of guardianship not expressly provided for in this article, other than guardianship ad litem, are abolished... .
5. Except as otherwise determined in a divorce proceeding or in some other proceeding authorized by law, the father and the mother jointly, if living and competent, or the survivor shall be the natural guardians of their minor children unless such child is married. The provisions of this article respecting guardians of the person shall apply to the natural guardians when applicable thereto, without appointment by or qualification in the court.
6. A guardian of the estate may be appointed for any incompetent. A guardian of the person may be appointed for any incompetent except a minor having a natural guardian in this state who is properly performing his duties as natural guardian or a married minor who is incompetent solely by reason of his minority.
Ind. Code Ann. § 29-1-18 (Burns Supp. 1987).
The juvenile code provides for the juvenile court to have exclusive jurisdiction in the case of a child in need of services. Ind. Code Ann. § 31-6-2-1(a)(2) (Burns 1987). Further, the juvenile code gives concurrent jurisdiction to the juvenile court and the probate court where a verified petition to terminate the parent-child relationship involving a delinquent child or a child in need of services is filed with either of the courts. Ind. Code Ann. § 31-6-5-4(b) (Burns 1987).
There is no conflict between these provisions of the juvenile and probate codes. They are designed to apply to differing circumstances and fact situations. When a CHINS petition is properly filed, the jurisdiction of the juvenile court transcends the custodial situation of the child to provide for the emergency circumstances and need of care and protection contemplated by the CHINS procedures. The juvenile court has jurisdiction and authority to hear and determine a CHINS petition even if the child is presently under guardianship by the probate court, a divorce court, or is, in fact, living with its parents as natural guardians.
It does not follow, however, that every time a custodial problem involving a child arises or by circumstance a child is not with its natural parents or its legal guardian, that that child is necessarily in circumstances contemplated as being in need of *621 services requiring the CHINS procedures. Neither does the statute provide for the juvenile court to sua sponte assume jurisdiction to institute CHINS proceedings. The authority to determine this question rests with the prosecuting attorney or the attorney for the county welfare department.
The guardian statute provides that the father and mother jointly if living and competent, or the survivor, shall be the natural guardians of their minor children unless such child is married. Ind. Code Ann. § 29-1-18-5 (Burns Supp. 1987). This expresses what the law always has been. If it were not so provided, it would be necessary for natural parents to go into court with each child to establish guardianship or leave the child in some sort of legal limbo as to where he or she belongs. Notably, that provision is preceded by "except as otherwise determined in a divorce proceeding or in some other proceeding authorized by law." The statute further provides that a guardian of the person may be appointed for a minor unless that minor has a natural guardian in this state who is properly performing his duties. Ind. Code Ann. § 29-1-18-6 (Burns Supp. 1987).
The facts in the instant case clearly showed the Thompsons did not live in Indiana. Other facts in evidence raised the question of whether the Thompsons were properly performing their duties as natural guardians. The Thompsons had deliberately placed Billy Joe in the Gorman's custody with the understanding that she would be brought to Indiana and adopted by the Gormans. The evidence indicated this was the Thompsons' intent at the time they adopted Billy Joe in Texas. They deliberately kept this information from the judge during the Texas adoption proceedings while the Gormans were with Billy Joe in a separate room. There was evidence from which the court could find that the Thompsons were more concerned with money than they were with Billy Joe's interests. There are facts which demonstrate the Thompsons at one time had an interest in taking Billy Joe into their home but lost that interest. There also are facts which demonstrate the Thompsons were willing to give Billy Joe to the Gormans for adoption and later changed their minds. It also was demonstrated to the guardianship court that the child was being well cared for in the Gormans' home. There were conflicts in all of these facts but the conflicts were before the trial court for resolution.
Clearly, it was apparent to the probate court that the final determination of Billy Joe's fate was yet to be made. In the meantime, it was necessary to have someone in legal control of her custody to be responsible for providing her day to day care. That is the purpose of the guardianship procedures in our law. The probate court had jurisdiction to make this determination. If the prosecuting attorney or welfare attorney determine that facts exist which demonstrate that this child is in need of services, then such a petition can be filed by either office in the juvenile court of Lake County, at which time that court will have jurisdiction to make that determination. Such a petition has not been filed by either office. The same is true of a petition to terminate the parent-child relationship of the Thompsons.
The trial court is affirmed.
SHEPARD, C.J., and GIVAN and DICKSON, JJ., concur.
DeBRULER, J., dissents without separate opinion.