932 N.E.2d 712 (2010)
In re the Matter of the PATERNITY OF P.B.
D.B., Appellant-Petitioner,
v.
M.B., Appellee-Respondent.
No. 03A01-1001-JP-5.
Court of Appeals of Indiana.
August 16, 2010.
*714 Dan A. Patterson, Jones Patterson & Tucker, Columbus, IN, Attorney for Appellant.
R. Patrick Magrath, Alcorn Goering & Sage, Madison, IN, Attorney for Appellee.

OPINION
CRONE, Judge.

Case Summary
D.B. ("Mother") appeals the denial of her motion to modify and terminate the parenting time of M.B. ("Father") with their son, P.B., her petition to hold Father in contempt of a visitation order, her motion for attorney's fees and therapist's fees, and her "Motion to Correct Prior Order and to Establish Correct Support *715 Arrearage." We affirm in part, reverse in part, and remand.

Issues
I. Did the trial court err in imposing a clear-and-convincing-evidence standard with respect to Mother's motion to modify and terminate Father's parenting time?
II. Did the trial court abuse its discretion in denying Mother's petition for contempt?
III. Did the trial court abuse its discretion in denying Mother's request for attorney's fees and therapist's fees?
IV. Did the trial court unilaterally modify the parties' Christmas parenting time schedule?
V. Did the trial court clearly err in denying Mother's "Motion to Correct Prior Order and to Establish Correct Support Arrearage"?

Facts and Procedural History[1]
In its "Order on All Pending Issues" dated December 11, 2009, the trial court found the following background facts:
Paternity was established by agreement [emphasis supplied] on November 20, 2001, regarding the parties' child, [P.B.], born July 8, 2001. In March of 2002, an Amended Order was entered regarding custody, parenting time, child support, etc. In November 2002, the parties again returned to court on limited issues of parenting time and access to records. In March of 2003, the parties again litigated issues related to child support and insurance. In February of 2004, the parties again were litigating issues of child support. In April of 2007, the parties litigated issues related to child support and smoking[[2]] and the Court found [Mother] in contempt regarding parenting time. In December of 2008, once again the parties were litigating child support and parenting time issues. [Father] was given "make-up" parenting time.
Appellant's App. at 18 (initial bracketed text in original). On December 29, 2008, Jon W. Webster was appointed special judge.
On January 9, 2009, Mother filed a petition for contempt. Mother has failed to include a copy of the petition in the record before us, but apparently it related to Father's alleged failure to comply with the agreed parenting time order in effect for Christmas 2008. On March 4, 2009, Mother filed an emergency petition to modify and terminate Father's parenting time. Again, Mother has failed to include a copy of this document in the record before us, but we surmise that it referenced allegations that Father had held a gun to P.B.'s head and had masturbated in his presence on separate occasions in late 2008. These allegations were reported to Child Protective Services ("CPS"), which found them to be unsubstantiated. We further surmise that the petition to modify also referenced the following: (1) the assessment of P.B.'s therapist, licensed clinical social worker William Link, that P.B. suffers from post-traumatic stress disorder as a result of his interactions with Father and that further visitation with Father would be emotionally harmful to him; and (2) pediatrician Dr. Cheryl Harris's agreement with this assessment, based on her visits with Mother and P.B.
On March 17, 2009, Father filed a petition for contempt, apparently related to Mother's alleged interference with and denial *716 of parenting time, and a petition to modify parenting time. On April 20, 2009, Mother filed a motion to withdraw wage withholding order and order direct payment. On May 5, 2009, Father filed a response and objection to Mother's motion regarding support, as well as a petition to appoint a guardian ad litem ("GAL"), appoint an expert/counselor to conduct a psychological evaluation, and have all parties submit to therapy/counseling.
On May 11, 2009, the trial court commenced a hearing on all pending issues. On May 12, 2009, the court issued an order scheduling an in camera interview with P.B. for May 27, 2009.[3] Also on May 12, 2009, the court issued an order finding that Father was current on his child support obligation as of May 11, 2009, and terminating the wage withholding order in favor of direct payment. On June 1, 2009, the court set a hearing for September 23 and 24, 2009, and denied Father's petition to appoint a GAL or evaluators. On July 27, 2009, Mother filed another petition for contempt, which is not in the record before us.
The hearing occurred as scheduled on September 23 and 24, 2009, and was continued to a later date. On November 13, 2009, Mother filed a "Motion to Correct Prior Order and to Establish Correct Support Arrearage," in which she requested that the court modify its May 12, 2009 order to reflect the following:
1. That [Father] was not current on the payment of child support at that time through the Courts;
2. That [Father] was current from wage withholding, but the same had not been paid to the Court;
3. It is the belief of [Mother] that it was withheld from [Father's] wages, but had not been paid to the Court;
4. That [Father] did not start paying in cash to the Court as shown by the attached sheet until October 9, 2009; [and]
5. That [Father] is in arrears as of October 23, 2009 the sum of $1,005.00[.]
Id. at 159-60.
The hearing concluded on November 23, 2009. On December 11, 2009, the court *717 entered its aforementioned "Order on All Pending Issues," which reads in pertinent part as follows:
Comes now [the parties and their counsel] for a hearing ... on the following pending issues:
 [Mother's] Petition to Modify (parenting time) filed on November 17, 2008;
 [Mother's] Petition and Application for Citation [for contempt] filed on January 7, 2009;
 [Mother's] Emergency Petition to Modify and Terminate Parenting Time by [Father] Prior to Hearing and Thereafter filed on or about March 4, 2009;
 [Father's] Petition to Modify (parenting time) filed March 17, 2009;
 [Father's] Petition for Citation for Contempt filed March 17, 2009;
 [Father's] Petition to Appoint Guardian Ad Litem, Appoint Expert/Counselor to Conduct a Psychological Evaluation and Have all Parties[ ] Submit to Therapy/Counseling filed May 5, 2009; and
 [Mother's] Petition and Application for Citation [for contempt] filed on July 27, 2009
and this Court, having heard and seen nearly twenty (20) hours of evidence, now finds as follows:
....
2. A review of the Chronological Case Summary makes it clear [Mother] and [Father] have chosen to parent through the judicial process. Typical for these parents is that there are presently seven (7) pending issues before this Court since spending the last Christmas season in Court!
3. However, the primary issue before this Court for decision is [Mother's] request to entirely eliminate [Father's] parenting time. Central to this Court's decision is IND.CODE § 31-14-14-1 which reads:
[ ] (a) A noncustodial parent is entitled to reasonable parenting time rights unless the court finds, after a hearing, that parenting time might:
(1) endanger the child's physical health and well-being; or
(2) significantly impair the child's emotional development.
(b) The court may interview the child in chambers to assist the court in determining the child's perception of whether parenting time by the noncustodial parent might endanger the child's physical health or significantly impair the child's emotional development.
(c) In a hearing under subsection (a), there is a rebuttable presumption that a person who has been convicted of:
(1) child molesting (IC XX-XX-X-X); or
(2) child exploitation (IC XX-XX-X-X(b));
might endanger the child's physical health and well-being or significantly impair the child's emotional development.
(d) If a court grants parenting time rights to a person who has been convicted of:
(1) child molesting (IC XX-XX-X-X); or
(2) child exploitation (IC XX-XX-X-X(b));
there is a rebuttable presumption that the parenting time with the child must be supervised.
(e) The court may permit counsel to be present at the interview. If counsel is present:

*718 (1) a record may be made of the interview; and
(2) the interview may be made part of the record for purposes of appeal.
and IND.CODE § 31-14-14-2 which reads:
The court may modify an order granting or denying parenting time rights whenever modification would serve the best interests of the child.
4. There is a dearth of case law addressing modification of parenting time in the context of a paternity, but there is no reason to believe the scope of the Court's review should be any different than in a dissolution proceeding when modification of parenting time is sought. On the issue of elimination of parenting time, [Mother] carries the burden of proof. Typically, that burden is by a preponderance of the evidence. However, a parent seeking total elimination or suspension of parenting time, even for a short period, surely must be held to some higher standard because the effect, if successful, is to essentially terminate parental rights while still maintaining the requirements of parental financial responsibility for payment of child support, health care costs, etc. AND, worse yet, cutting a child off from the parent. Although no higher courts of this State have spoken on this issue, at least a clear and convincing standard, should be required before a trial court totally eliminates parenting time. See generally, IND.CODE § 31-34-12-2.[[4]] A parent's right to raise and be a part of a child's young life is a fundamental Constitutional right deserving safeguard from only but the strongest of proof terminating or suspending that right.
5. This Court has before it, evidence which is so in conflict, that [it] is impossible to reconcile. On the one hand are the unequivocal recommendations of William "Pete" Link, LCSW, and Cheryl S. Harris, M.D., that [Father's] parenting time be suspended or supervised. On the other hand, is a nearly total lack of evidence that would cause or lead educators, caregivers or other friends and family familiar with [P.B.] and [Father] to believe [P.B.] is in any distress and a father who shows no other signs of being an abuser or deviate.
There have never been any criminal charges filed against [Father] for any type of sex crime involving [P.B.] nor for pointing a firearm at [P.B.]. This fact alone is not conclusive, but important because the allegations are so severe, depraved, and reprehensible that surely if they had the slightest merit, something would have been filed.
Each official investigation by the Indiana Department of Child Services involving allegations against [Father] has been unsubstantiated.
There is little, if any, evidence from school personnel that [P.B.] is anything other than a healthy, rambunctious little boy.
The conclusions of Mr. Link and Dr. Harris are unsupported by anything other tha[n] [P.B.'s] allegations with only his mother present and with no input from [Father]. The Petition to Modify parenting time is denied. The Indiana Parenting Time Guidelines shall apply.
6. The Petition and Application for Citation filed by [Mother] on or about January 9, 2009 is denied. The Petition for Citation for Contempt filed by [Father] on March 17, 2009 is denied.

*719 7. As of and including November 20, 2009, [Father's] child support arrearage is current. The "unresolved" payment from February, 2009 is between [Father] and the State of Indiana. Thus, there is no finding of contempt.
8. Each party shall pay their own attorney fees, costs, and expenses of litigation.
9. [Mother] shall be solely responsible for any fees due or to be due William Link. Any uninsured medical expense owing Dr. Harris shall be handled as would any other medical or dental expense.
Id. at 17-21 (footnotes omitted). The trial court did not rule on Mother's "Motion to Correct Prior Order and to Establish Correct Support Arrearage."
Mother now appeals. Additional facts will be provided as necessary.

Discussion and Decision

I. Mother's Burden of Proof for Termination of Father's Parenting Time
In ruling on Mother's motion to modify and terminate Father's parenting time, the trial court relied on Indiana Code Sections 31-14-14-1 and -2, which govern visitation in paternity proceedings. See Ind.Code ch. 31-14 (entitled "Visitation Following Determination of Paternity"). As mentioned above, Indiana Code Section 31-14-14-1(a) provides that a noncustodial parent, such as Father in this case, "is entitled to reasonable parenting time rights unless the court finds, after a hearing, that parenting time might: (1) endanger the child's physical health and well-being; or (2) significantly impair the child's emotional development." We have stated that even though Indiana Code Section 31-14-14-1 "uses the term `might,' this court interprets the statute to mean that a court may not restrict visitation unless that visitation would endanger the child's physical health or well-being or significantly impair the child's emotional development." Farrell v. Littell, 790 N.E.2d 612, 616 (Ind.Ct.App.2003) (citing Stewart v. Stewart, 521 N.E.2d 956, 960 n. 3 (Ind. Ct.App.1988), trans. denied, which interpreted predecessor to modification statute for dissolution proceedings). "By its plain language, Indiana Code section 31-14-14-1 requires a court to make a specific finding of physical endangerment or emotional impairment prior to placing a restriction on the noncustodial parent's visitation." Id. (citation and quotation marks omitted). "A party who seeks to restrict a parent's visitation rights bears the burden of presenting evidence justifying such a restriction." Id.
At this point, we emphasize that the issue of whether the moving party has met his or her burden of proving that visitation with the other parent "would" (rather than "might") endanger the child's physical health or well-being or significantly impair the child's emotional development is an entirely separate issue from which burden of proof should apply, which is the question that Mother raises in this appeal. Mother contends that the trial court erred in concluding that the applicable burden is the clear-and-convincing-evidence standard, rather than the less onerous preponderance-of-the-evidence standard.[5] "In ordinary civil actions, *720 a fact in issue is usually sufficiently proved by a preponderance of the evidence." Moore v. Jasper County Dep't of Child Servs., 894 N.E.2d 218, 226 (Ind.Ct. App.2008). "However, clear and convincing proof is a standard frequently imposed in civil cases where the wisdom of experience has demonstrated the need for greater certainty, and where this high standard is required to sustain claims which have serious social consequences or harsh or far reaching effects on individuals." Id. (citation and quotation marks omitted).
The clear-and-convincing standard applies in proceedings to terminate parental rights, which are initiated by the State. Id.; Ind.Code § 31-37-14-2. Here, the trial court reasoned that the clear-and-convincing standard also should apply in this case because the effect of Mother's motion to modify and terminate parenting time, "if successful, is to essentially terminate parental rights while still maintaining the requirements of parental financial responsibility for payment of child support, health care costs, etc. AND, worse yet, cutting a child off from the parent." Appellant's App. at 19. Although we are sympathetic to the trial court's concerns, we observe that the termination of Father's parenting time would not necessarily be permanent, unlike in a termination of parental rights proceeding.[6] We further observe that, unlike in a termination of parental rights proceeding, it is the child's custodial parent, and not the State, that has requested the restriction of parenting time. For these reasons, and until either our legislature or our supreme court determines otherwise, we conclude that the preponderance standard is the appropriate burden of proof in this situation.[7]See Stewart, 521 N.E.2d at 963 (holding that preponderance standard applied to party seeking to terminate visitation rights in dissolution proceeding "[b]ecause the private interest at stake, although great, is not permanently terminated and the state is not the initiator of the termination").[8]
*721 Father acknowledges that the proper remedy "would be to remand the matter for judgment consistent with the proper standard" but contends that "such a remedy is empty and pointless where the trial court's order makes clear that the evidence was insufficient to show even on a preponderance that endangerment will result." Appellee's Br. at 20-21. We disagree. As the trial court's order suggests, the issue of whether to terminate Father's visitation with P.B. is essentially a credibility contest between Mother's witnesses and Father's witnesses. The trial court must consider and weigh the conflicting evidence and determine whether the evidentiary balance tips in favor of Mother, that is, whether it is more likely than not that visitation with Father would endanger P.B.'s physical health or well-being or significantly impair his emotional development. For that reason we must reverse and remand for further proceedings consistent with this opinion.

II. Denial of Mother's Petition for Contempt
The Indiana Parenting Time Guidelines contain the following parenting time schedule for Christmas vacation:
One-half of the period which will begin at 8:00 P.M. on the evening the child is released from school and continues to December 30 at 7:00 P.M. If the parents cannot agree on the division of this period, the custodial parent shall have the first half in even-numbered years. In those years when Christmas does not fall in a parent's week, that parent shall have the child from Noon to 9:00 P.M. on Christmas Day.
Ind. Parenting Time Guideline II(D)(2)(B).
In 2003, Mother and Father agreed to the following parenting time schedule:
The parties shall follow the Indiana Parenting Time Guidelines as to parenting time over the Christmas holiday season, with the exception that, beginning in 2003, and all other years ending in an odd number, father shall have parenting time with the child on Christmas Day. Mother shall deliver the child to father at 10:00 AM Christmas Eve, and father shall deliver the child to [mother] at 9:30 PM that evening. Mother shall enjoy parenting time with the child on Christmas Day.
In 2004, and all other years ending in an even number, father shall enjoy parenting time with the child on Christmas Day. Father shall pick up the child at 9:00 AM, and mother shall pick up the child at 7:00 PM. Mother shall enjoy parenting time on Christmas Eve.
*722 Appellant's App. at 24. The record indicates that this agreed schedule was the source of considerable confusion and friction between Mother and Father, with Mother being held in contempt for not allowing visitation during Christmas of 2006. Tr. at 707; Appellant's App. at 8.
At a hearing regarding visitation on December 16, 2008, Judge Stephen R. Heimann stated,
[Father] can either have what they negotiated out which is not part of the Court's records or I'll switch it to the Indiana Parenting Time Guidelines as it relates to Christmas visitation which my review of the guidelines, [Mother] gets the first [half] this year and he gets the second half this year.
So, I don't care whether he keeps what he's got now or whether he wants to switch to the Indiana Parenting Time Guidelines but I'm not going to flip flop the years around on that.
I'm just telling you that so you don't have to keep talking about Christmas, save a little time.
Petitioner's Ex. 10 at 2. After a brief recess, Father's counsel stated, "Your Honor, we will [choose] to leave it the way it is until we get back to Court. It sounds like we are going back anyway. So, part of the agreement that apparently isn't signed..." Id. at 4. Mother's counsel chimed in, "So that I can clarify, that means on Christmas day, the child returns at 7:00... picks him up at 9:00 and returns at 7:00 ..." Id. Judge Heimann replied, "I'll just put mediated settlement, non-ordered... ['03], okay. Christmas, we've agreed that he is going to leave it the way it is now and pursuant to the 2003 mediated settlement, which mediated settlement was not entered as an order in this Court." Id.
At 9:00 a.m. on December 25, 2008, Mother and P.B. met Father in a credit union parking lot in Columbus for the visitation exchange. Mother, who was carrying a bag of P.B.'s clothes, told Father that she would return at 7:00 p.m. to pick up P.B. Father told her that he would not bring back P.B. that evening. Mother and Father argued, and ultimately Father drove away with P.B. and kept him until 9:00 p.m. on December 30, 2008. Mother reported the incident to the police and filed a petition to hold Father in contempt of the visitation order.[9] Special Judge Webster heard evidence on the matter and denied Mother's petition.
On appeal, Mother contends that Special Judge Webster erred in doing so. "To hold a party in contempt for a violation of a court order, the trial court must find that the party acted with `willful disobedience.'" Sutton v. Sutton, 773 N.E.2d 289, 297 (Ind.Ct.App.2002) (citation omitted).
The determination whether a party willfully disobeyed an order is left to the sound discretion of the trial court. Where the court declined to find a party in contempt, we may reverse only where there is no rational basis for the trial court's action. Unless the judgment is against the logic and effect of the facts and circumstances, and the reasonable inferences therefrom, the court acted within its discretion. We will not reweigh the evidence or assess the credibility of the witnesses, and we view the evidence in the light most favorable to the judgment.
*723 Heagy v. Kean, 864 N.E.2d 383, 386 (Ind. Ct.App.2007) (citations and quotation marks omitted), trans. denied. We note that "[a] party may not be held in contempt for failing to comply with an ambiguous or indefinite order. Otherwise, a party could be held in contempt for obeying an ambiguous order in good faith." Deel v. Deel, 909 N.E.2d 1028, 1032 (Ind. Ct.App.2009) (citation and quotation marks omitted).
Mother focuses on Father's testimony that he "had no intention of bringing [P.B.] back to the place of exchange at 7:00 P.M. on December 25, 2008" and asserts that he "willfully chose to undermine the court's authority, justice and dignity by violating its order and he should have been found in contempt of court for doing so." Appellant's Br. at 21, 22. Father states that
Mother arrived at the exchange for Christmas with a bag of clothes for [P.B.], which she only did for overnight visitation periods. The reasonable inference to be drawn from this is that Mother expected that [P.B.] would be spending the second holiday week with Father. Father testified that he did not intend to violate the trial court's order and acted according to what he understood the court's order to mean.
Appellee's Br. at 24.[10] In light of the conflicting evidence on this issue, we find no abuse of discretion in the trial court's decision not to hold Father in contempt.

III. Denial of Mother's Request for Attorney's Fees and Therapist's Fees
Mother contends that the trial court erred in denying her request to order Father to pay her attorney's fees and the fees of P.B.'s therapist, William Link. In support of her argument, Mother cites Indiana Code Section 31-16-11-1, which provides in pertinent part,
The court periodically may order a party to pay a reasonable amount for:
(1) the cost to the other party of maintaining or defending [certain child support proceedings];
(2) attorney's fees; and
(3) mediation services;
including amounts for legal services provided and costs incurred before the commencement of the proceedings or after entry of judgment.
Mother argues that Father's "misconduct... created additional legal expenses and medical expenses for which [Mother] was responsible. Without the misconduct of [Father], [Mother] otherwise would not have anticipated these expenses." Appellant's Br. at 22.
In child support proceedings, a trial court has broad discretion to impose *724 attorney's fees on either party. Thompson v. Thompson, 868 N.E.2d 862, 870 (Ind.Ct.App.2007).
The trial court may consider the resources of the parties, the financial earning ability of the parties, and any other factors that bear on the reasonableness of the award. The trial court[ ] may also consider any misconduct on the part of either of the parties that creates additional legal expenses not otherwise anticipated.
Id. (citation and quotation marks omitted). "We may reverse the trial court's decision only if it is clearly against the logic and effect of the circumstances before the court." Id.[11]
As Father correctly observes, the evidence was conflicting regarding whether he committed any misconduct, and we note that the trial court was free to believe or disbelieve witnesses as it saw fit. Moreover, as Father points out, Indiana Code Section 31-16-11-1 says nothing about therapist's fees. As such, we find no abuse of discretion here. See Johnson v. Am. Classic Mortg. Corp., 894 N.E.2d 268, 271 n. 3 (Ind.Ct.App.2008) ("[I]t is just as important to recognize what a statute does not say as it is to recognize what it does say. A court may not read into a statute that which is not the expressed intent of the legislature.") (citation and quotation marks omitted).

IV. Modification of Christmas Parenting Time Schedule
In her initial brief, Mother contends that the trial court "abused its discretion in unilaterally modifying Christmas Vacation Parenting Time without hearing evidence on the issue or a request by either party to act." Appellant's Br. at 23. Father points out that he "twice [p]etitioned the court for such a modification and specifically requested the relief the trial court granted, modification to Indiana Parenting Time Guidelines." Appellee's Br. at 26. Father further observes that "Mother was notified of [his] prayer for relief long before the hearing below" and that "[t]he parties litigated the matter in open court, providing lengthy testimony over the problems created by the prior order and the need for modification." Id. Mother does not refute these observations in her reply brief. That being the case, we find no abuse of discretion.

V. Motion to Correct Prior Order and to Establish Correct Support Arrearage
As previously mentioned, the trial court did not rule on Mother's "Motion to Correct Prior Order and to Establish Correct Support Arrearage," dated November 13, 2009, which she filed in response to the trial court's order dated May 12, 2009. In her initial brief, Mother contends that the trial court erred in denying her motion. We take it that Mother, in so contending, presumes that her motion was deemed denied pursuant to an applicable provision of the Indiana Trial Rules.
Father characterizes Mother's motion as a motion to correct error pursuant to *725 Indiana Trial Rule 59(C) and asserts that it was untimely filed. Trial Rule 59(C) provides that a motion to correct error "shall be filed not later than thirty (30) days after the entry of a final judgment or an appealable final order." The trial court's May 12 order was neither a final judgment nor an appealable final order, in that it did not "dispose[ ] of all claims as to all parties" and the trial court did not "in writing expressly determine[ ] under Trial Rule 54(B) ... that there is no just reason for delay and in writing expressly direct[ ] the entry of judgment ... under Trial Rule 54(B) ... as to fewer than all the issues, claims or parties[.]" Ind. Appellate Rule 2(H) (defining "final judgment" for purposes of appellate rules). Consequently, Mother's motion cannot properly be considered either a motion to correct error or a motion for relief from judgment pursuant to Trial Rule 60(B). See Allstate Ins. Co. v. Fields, 842 N.E.2d 804, 806 (Ind.2006) (holding that Ind. Trial Rule 60(B) "authorizes a motion for relief only from final, not interlocutory orders"). Thus, it appears that Mother's motion is essentially a motion to reconsider.
We need not address the timeliness of Mother's motion, however, because Mother has failed to establish that she is entitled to relief in any event.[12] "[F]indings of fact by the trial court are reviewed for clear error. Clear error exists where the record does not offer facts or inferences to support the trial court's findings or conclusions [thereon]." Grabowski v. Waters, 901 N.E.2d 560, 563 (Ind.Ct.App.2009) (citation omitted), trans. denied. Mother states,
At issue with the child support arrearage is a Court Ordered cash payment from [Mother] to [Father] in February 2009, which was Ordered to correct a $304.00 overpayment in 2008 by [Father]. [Mother] made that cash payment to [Father] for $304.00 pursuant to the Order, but she was not given credit for doing so in the child support office. That payment does not appear on the child support statement, and therefore, the statements offered at trial as Respondent's Exhibits "A" are incorrect.
Appellant's Br. at 25.
Father observes that during the hearing on May 11, 2009, Mother's counsel informed the trial court that Mother was not claiming an arrearage at that time. See Tr. at 89 ("THE COURT: Just so I understand, you're not claiming an arrearage today? [MOTHER'S COUNSEL]: No, we're not."). Father also observes that during the hearing on September 23, 2009, both parties submitted their own child support history calculations. We agree with Father that Mother "fails to demonstrate that the trial court did anything other than resolve a factual dispute within its discretion." Appellee's Br. at 29. Accordingly, we find no clear error here.
Affirmed in part, reversed in part, and remanded.
FRIEDLANDER, J., and BARNES, J., concur.
NOTES
[1] Mother's three-page statement of case is single-spaced in violation of Indiana Appellate Rule 43(E).
[2] The record indicates that P.B. was born prematurely and is susceptible to respiratory illnesses.
[3] The order reads in pertinent part as follows:

[W]ith three and one half (3 1/2) hours of testimony done and approximately ten to twelve (10-12) hours to go, it is crystal clear that if [Mother] proves her allegations and theories, [Father] will probably lose his parenting time. On the other hand, if [Mother's] theory is nothing more than an attempt to smear [Father] and ends up being unfounded, she may well lose custody. This is one of those cases where, in the end, one of the parties has to be outright perjurious because they both simply cannot be being honest with the Court. The dilemma is that if [Mother] is correct in her theory and the Court permits parenting time, [P.B.] is at risk. On the other hand, if no parenting time is permitted and [Mother's] theory is just that, a theory, [Father] is cheated out of irreplaceable months with his son.
Appellant's App. at 27-28. The order also admonished the parties against "coaching" P.B. prior to the in camera interview. Id. at 28. On May 13, 2009, one day after the order was issued, Link reported to CPS that P.B. had told him that Father had asked P.B. to touch Father's penis approximately three years prior and that Father had touched P.B.'s bottom. When CPS questioned P.B. outside of Mother's presence, he stated that Father had asked him to touch Father's "`privacy'" but that no touching occurred because he ran out of the room. Respondent's Ex. D. P.B. also stated that Father "looked at his bottom for mosquito bites, but [P.B.] never felt his dad touch his bottom." Id. Father denied asking P.B. to touch his penis and stated that he put "itch cream" on a mosquito bite on P.B.'s bottom. Id. CPS determined that the allegations "were not substantiated as there is no evidence of touching or fondling that occurred based on [P.B.'s] and [Father's] statements." Id.
[4] Indiana Code Section 31-34-12-2 states, "Except as provided in IC XX-XX-X-X.5(d), a finding in a proceeding to terminate parental rights must be based upon clear and convincing evidence."
[5] Our supreme court has explained that the clear-and-convincing standard is an intermediate standard of proof that

lies between a preponderance of the evidence and beyond a reasonable doubt which is required to find guilt[ ] in criminal prosecutions. The burden of proof by clear and convincing evidence is not a burden of convincing you that the facts which are asserted are certainly true or that they are almost certainly true or are true beyond a reasonable doubt. It is, however, greater than a burden of convincing you that the facts are more probably true than not true.
J.C.C. v. State, 897 N.E.2d 931, 934 (Ind.2008) (citation omitted).
[6] Mother states that she "is not seeking to totally eliminate [Father's] parenting rights. [Mother] is only seeking to temporarily eliminate [Father's] parenting time with [P.B.] until [P.B.] is physically and mentally able to handle seeing [Father]." Appellant's Br. at 19. Although we are unable to verify the precise relief that Mother sought in her motion to modify and terminate visitation, we note that Father does not dispute this statement.
[7] Father asserts that "[t]he imposition of [the] burden to prove that harm will result rather than merely proving harm might result is tantamount to a requirement of `clear and convincing' evidence of endangerment to the child." Appellee's Br. at 20. We disagree. As we observed in Stewart, "Why would the legislature acknowledge the basic right of visitation of a non-custodial parent and then effectively abolish that right by permitting terminations supported only by speculative, possibility-type evidence[?]" 521 N.E.2d at 960 n. 3. By definition, a preponderance of the evidence is more than "speculative, possibility-type evidence."
[8] The Stewart court based its holding primarily on our supreme court's opinion in In re Guardianship of Thompson, 514 N.E.2d 618 (Ind. 1987), from which the Stewart court deduced that the burden of proof required to establish a guardianship is a preponderance of the evidence. See Stewart, 521 N.E.2d at 962 ("We must conclude from the result in Thompson that clear and convincing evidence was not required in order for the trial court to establish the guardianship which, in effect, deprived the [affected] couple of all their parental rights for a temporary, but indefinite, period of time. The case before us presents an analogous situation. Here, while the loss of visitation is the loss of a significant parental right, it is not necessarily a permanent loss. A future change in condition could remove the basis for termination of visitation. Thus, we conclude the Thompson opinion would indicate that the burden of proof required in this case is a `preponderance of the evidence.'"). Father points out that our supreme court subsequently held otherwise. See In re Guardianship of B.H., 770 N.E.2d 283, 287 (Ind.2002) ("To resolve the dispute in the caselaw regarding the nature and quantum of evidence required to overcome [the presumption that a child's best interests are ordinarily served by placement in the custody of the natural parent], we hold that, before placing a child in the custody of a person other than the natural parent, a trial court must be satisfied by clear and convincing evidence that the best interests of the child require such a placement."). Father then asserts,

[T]o the extent that the Stewart decision holds that a party seeking to terminate Parenting Time faces the same burden as a party seeking Guardianship, Stewart remains good law. However, as to the quantum of evidence, Stewart incorrectly held that "preponderance of the evidence" applied to Guardianship and termination of Parenting Time cases.
Appellee's Br. at 19. We believe that the Stewart court merely looked to guardianship proceedings for guidance in its analysis and that its reasoning and result are sound and remain unaffected by our supreme court's holding in B.H.
[9] Not surprisingly, the parties' accounts of the Christmas visitation exchange vary significantly. Mother testified that Father pushed her several times. Tr. at 94. Father had worked at the credit union where the exchange occurred and subpoenaed the parking lot security tape to support his testimony that he did not push Mother. Id. at 701. That exhibit is not in the record before us.
[10] Father offers the following explanation:

In reviewing the trial court's prior order, it starts out with the general rule that the parties shall follow the Guidelines and then provides an exception. The exception is to part two of the Guideline rule, and gives a different method of dividing up Christmas Day. Thus, under the trial court's prior order Father was entitled to the second half of the Christmas Break under part one of the Guideline rule, as well as the 9:00AM to 7:00PM on Christmas Day under the trial court's modified part two of the rule. As it turned out Christmas Day was in Father's half of the Break, meaning that Father's regular Christmas Parenting Time began immediately after his Christmas Day Parenting Time. Which is exactly what happened, Father picked the Child up at 9:00AM on Christmas Day and returned the Child on December 30th.
Both parties were aware of the ambiguity prior to December 25, 2008. Father had made his position clear by letters through counsel, that he would be exercising his Christmas Day and second half of Christmas Break Parenting Time.
Appellee's Br. at 24.
[11] Father states,

The case-law cited by Mother is relevant only to the issue of whether a trial court has abused its discretion by awarding fees. However, the trial court is never under an obligation to award fees in the first instance. Thus, where the trial court has merely elected not to do that which it is not required to do, there is no issue on appeal.
Appellee's Br. at 27 (citation omitted). We disagree with Father's assertion that "there is no issue on appeal" when a trial court elects not to award fees. Among other things, a party's misconduct may be so egregious, or the parties' earning disparity may be so vast, that a failure to award fees would constitute an abuse of discretion.
[12] In her reply brief, Mother reframes her argument as an appeal "from the Order on All Pending Issues of December 11, 2009 which specifically addressed child support and ruled that Father's child support was current as of and including November 20, 2009." Appellant's Reply Br. at 13. "Appellants are not permitted to present new arguments in their reply briefs, and any argument an appellant fails to raise in his initial brief is waived for appeal." Kelly v. Levandoski, 825 N.E.2d 850, 857 n. 2 (Ind.Ct.App.2005), trans. denied.