## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Aug 01 2018, 8:23 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Richard J. Thonert
Fort Wayne, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| In the Matter of the Paternity of T.A. (Minor Child): | August 1, 2018 |
| | Court of Appeals Case No. 18A-JP-238 |
| C.B., *Appellant-Petitioner,* | Appeal from the Adams Circuit Court |
| v. | The Honorable Chad E. Kukelhan, Judge |
| L.A., *Appellee-Respondent.* | Trial Court Cause No. 01C01-1503-JP-11 |

**Bailey, Judge.**

# Case Summary

C.B. ("Mother") appeals an order restricting her parenting time with T.A. ("Child"), such that overnights are excluded, upon the petition of L.A. ("Father"). She presents the sole issue of whether the trial court, in response to this Court's order of remand, entered findings insufficient to support the parenting time restriction. We affirm.

# Facts and Procedural History

The relevant facts were recited by this Court in the original direct appeal:

> Child was born in September 2012. Mother and Father were never married, but Father signed a paternity affidavit establishing his paternity the day after Child's birth. Mother and Father's relationship ended sometime in 2013. Thereafter, Child resided with Mother and his nine-year-old half-sister in Berne, Indiana. Mother and Father voluntarily shared equal parenting time of Child and their arrangement worked "fairly well." Mother eventually obtained employment in Decatur and arranged for Child to attend daycare nearby.

> In May 2014, Mother met D.B. D.B. informed Mother that he was on probation after having served time in the Department of Correction for a Class C felony child molesting conviction. D.B. explained the circumstances giving rise to his conviction, admitting that when he was twenty-one, he and an underage girl engaged in oral sex outside a bowling alley. He claimed that he thought the girl was sixteen, but that she in fact was only thirteen.

Over the next six months, Mother and D.B. became better acquainted and eventually started dating. D.B. successfully completed his probation, finished his counseling, and passed a polygraph and other examinations administered by a mental health professional. Thereafter, the Adams Superior Court granted him permission to be in the presence of Mother's three children. Father was not privy to D.B.'s request for permission to be around Child. D.B.'s probation officer and a mental health counselor both approved of the terms of a safety plan for D.B. to follow when in the presence of Mother's children.

Father and Mother negotiated a Stipulation and Agreed Order (Custody Order) regarding custody and parenting time for Child. Father had met D.B. prior to submitting the Custody Order to the trial court, but Mother had not informed Father of D.B.'s criminal past. The trial court accepted the Custody Order submitted by Mother and Father on July 28, 2015. Paragraph 7 provided:

> It is agreed that both parties are fit and proper persons to have the primary physical custody of the minor child and, as such, Father and Mother shall have joint legal and equally shared physical custody of the parties' minor child. For purposes of the holiday schedule in the Indiana Parenting Time Guidelines only, Mother shall be deemed the custodial parent. Father and Mother shall have parenting at all reasonable times agreed upon by the parties. However, if the parties cannot agree, then parenting time shall go to a two week schedule where Mother has the child Monday, Tuesday, and Wednesday, Father on Thursday and Friday, and Mother on Saturday and Sunday for week one. Week two shall see Father having custody Monday, Tuesday, and Wednesday, Mother on Thursday and Friday, and Father on Saturday and Sunday, with exchanges taking place at 7:00 p.m. at

the McDonalds in Berne, Indiana or other place as the parties may agree.

Mother and Father further agreed:

> The parties agree that no modification of this joint legal custody agreement of the parties shall be made except upon a showing of [a] substantial change in circumstances of the statutory considerations so as to make the existing joint legal custody order of this Court not in the best interests of the child. The parties agree that the remarriage of either party is not sufficient ground to satisfy the substantial change of circumstances standard for the purposes of modifying the joint legal custody arrangement.

Mother and D.B. eventually married on June 10, 2016. Mother planned to move with Child into D.B.'s home in Fort Wayne on August 1, 2016. Mother gave Father a week's notice of her impending marriage and informed him of her intent to relocate only after confronted by Father.

After Mother and D.B. married and Father learned of her intent to move with Child to Fort Wayne, Father conducted an internet search of D.B.'s address and learned that D.B. was a registered sex offender. Father confronted Mother with the information and informed her that he was terminating her physical custody until he could find out more about D.B. and the circumstances surrounding his conviction. Father told Mother that he would permit her to have visitation with Child so long as he or his mother were present to ensure that Mother would not have Child around D.B. Father offered Mother parenting time on several occasions, subject to his requested accommodations to prevent D.B. from being around Child, but Mother refused, believing that Child would not understand the circumstances.

On July 27, 2016, Father filed a Motion for Modification of Child Custody asserting that there had been a substantial change in circumstances such that a modification of the joint child custody order was in the best interests of Child. Specifically, Father stated that "it ha[d] come to [his] attention that Mother recently married [D.B.], who was convicted of child molesting… and is a registered sex offender," and that he had "grave concerns about the safety of [Child] if [Child] is permitted to be around [D.B.]" On August 25, 2016, Mother filed a Verified Application for Order to Show Cause, For Finding of Contempt, and For Enforcement of Custody Order based on Father's refusal to allow Child to be in her care unless she agreed to his terms.

The trial court held a hearing on the parties' motions on August 29, 2016. Father testified and requested that he be awarded sole custody of Child and that Mother have restricted visitation. Father admitted to the court that at the time of the hearing he was serving home detention for a conviction related to his possession of marijuana and paraphernalia. Mother, D.B., D.B.'s probation officer, and D.B.'s mental health counselor testified at the hearing. D.B.'s mental health counselor summarized his interactions with D.B., explained that the results of various assessments in which D.B. participated indicated that D.B. was not a danger to Child, and testified that he had formed a similar opinion. At the conclusion of the hearing, the trial court took the matter under advisement.

On September 21, 2016, the trial court entered its order granting Father sole custody and providing Mother with restricted parenting time. Specifically, the court ordered that Mother was to have parenting time on alternate weekends and scheduled holidays for ten hours per day. The trial court found that overnight visitation with Mother was not appropriate and specified that Child was to be returned at least one hour before bedtime. The trial court also determined that Mother was to have no mid-week visitation on account of Child's age and "the

distance created between the parties by [M]other." The trial court incorporated the safety plan devised by D.B.'s counselor and ordered Mother to follow such plan during her parenting time with Child.

*In the Matter of the Paternity of T.A.*, No. 01A02-1611-JP-2729, slip op. at 1-3 (Ind. Ct. App. June 21, 2017) (internal citations and footnotes omitted).

[3] On appeal, Mother argued that the trial court abused its discretion in granting Father sole custody of T.A. and in restricting her parenting time. *See id.* at 1. As to the custody decision, we found no abuse of discretion. *Id.* at 4. However, with respect to the parenting time restriction, we found remand necessary, stating:

> [T]he trial court restricted Mother's parenting time, but did not make a specific finding that visitation would endanger Child's physical health or well-being or significantly impair Child's emotional development. Mother has established prima facie error in this regard. Accordingly, we remand to the trial court with instructions to make findings to support the parenting time restrictions or enter an order without said restrictions.

*Id*. at 5.

[4] On remand, the trial court entered its "Order of the Court Supporting Parenting Time Restriction" in fourteen paragraphs:

1. Mother chose to begin a relationship with a convicted child molester.

2. Mother chose to marry a convicted child molester.

3. Mother chose to move the child into the home of a convicted child molester.

4. Mother failed to disclose the facts contained in paragraphs 1, 2, and 3 of this order in a timely manner to Father.

5. Mother chose to deceive Father and placed her relationship with a convicted child molester above the best interest of her child.

6. Mother created and perpetuated a feeling of distrust between she and Father.

7. Father's distrust of Mother and said convicted child molester permeates the relationships between Mother, Father, child molester and most of all the Child.

8. A safety plan remains in full force and effect to protect the Child from the convicted child molester during daytime parenting time with Mother.

9. Mother was afforded no overnights with the child as the Court finds that the Child is more vulnerable at night when Mother will be sleeping.

10. The Court ordered Mother's overnight parenting time restricted based on the evidence and conclusions contained in paragraphs 1-9 of this order.

11. The Court further finds that the evidence and conclusions contained in paragraphs 1-9 support a finding and conclusion that it would be unreasonable to allow overnight parenting time.

12. In addition, overnight parenting time would (1) endanger the child's physical health and well-being or (2) significantly impair the child's emotional development.

13. All prior Orders of the Court to remain in full force and effect.

14. The Clerk shall furnish a copy of this Order to the parties and attorneys of record.

Appealed Order at 1-2. Mother now appeals.

# Discussion and Decision

At the outset, we note that Father has not filed an appellee's brief. When an appellee fails to submit a brief, we need not undertake the burden of developing an argument for the appellee. *Santana v. Santana*, 708 N.E.2d 886, 887 (Ind. Ct. App. 1999). Applying a less stringent standard of review, we may reverse the trial court if the appellant can establish prima facie error. *Id.* "Prima facie" has been defined as "at first sight, on first appearance, or on the face of it." *Parkhurst v. Van Winkle*, 786 N.E.2d 1159, 1160 (Ind. Ct. App. 2003).

Indiana has long recognized that the right of parents to visit their children is a precious privilege that should be enjoyed by noncustodial parents. *Patton v. Patton*, 48 N.E.3d 17, 21 (Ind. Ct. App. 2015). A party who seeks to restrict a parent's visitation bears the burden of presenting evidence justifying a restriction. *In re Paternity of P.B.*, 932 N.E.2d 712, 719 (Ind. Ct. App. 2010).

[7]    Indiana Code Section 31-14-14-1 provides that a "non-custodial parent is entitled to reasonable parenting time rights unless the court finds, after a hearing, that parenting time might: (1) endanger the child's physical health and well-being; or (2) significantly impair the child's emotional development." Even though the statute uses the term "might," this Court has interpreted the statute to mean that a court may not restrict parenting time unless that parenting time would endanger the child's physical health or well-being or significantly impair the child's emotional development. *Walker v. Nelson*, 911 N.E.2d 124, 130 (Ind. Ct. App. 2009). "Indiana Code § 31-14-14-1, by its plain language, requires a court to make a finding of physical endangerment or emotional impairment prior to placing a restriction on the noncustodial parent's visitation." *In re Paternity of V.A.M.C.*, 768 N.E.2d 990, 1001 (Ind. Ct. App. 2002).

[8]    Here, the trial court's order on remand restricted Mother from exercising overnight parenting time and specified, "overnight parenting time would (1) endanger the child's physical health and well-being or (2) significantly impair the child's emotional development." Appealed Order at 2. In compliance with this Court's remand order, the trial court entered the requisite statutory finding to support the restriction it imposed.

[9]    However, Mother contends that the order does not provide for adequate appellate review and asks that we vacate it or remand the matter a second time. Specifically, Mother argues that the trial court entered "conclusions, not findings from the evidence on the trial record," Appellant's Brief at 17, the

reference to endangerment lacked "explanation by [the] trial court as to how the Conclusion was reached from the evidence," *id.* at 19, some paragraphs relate to "bad judgment" as opposed to a "statutory factor," *id.* at 22, and reference is made to a "safety plan [that] was terminated upon D.B.'s satisfactory completion of probation on May 16, 2016," *id.*

[10] To the extent that Mother suggests the trial court was required to enter findings of fact and conclusions thereon pursuant to Indiana Trial Rule 52, the statute at issue does not incorporate this requirement. It is clear from the trial court's findings and order on remand that the trial court considered D.B.'s criminal history and Mother's concealment of that history from Father in evaluating the risk of harm to Child. To the extent that Mother suggests reweighing of the evidence, we cannot oblige. Parenting time decisions are committed to the sound discretion of the trial court, and we will neither reweigh the evidence nor reexamine the credibility of the witnesses. *Walker*, 911 N.E.2d at 130.

[11] As for Mother's contention that the trial court entered an "erroneous unsupported conclusion," Appellant's Brief at 25, with reference to an expired safety plan, we disagree. D.B.'s testimony about the safety plan expiration was equivocal but he appeared to believe that the plan would remain in place until he completed counseling.[1] His therapist testified and clarified that there was "no court punishment for violating the safety plan" because D.B. had

---

[1] D.B. testified that the safety plan would expire "as soon as [he] was released from counseling," but when asked "so your safety plan is expired," he replied: "I have no idea." (Tr. at 26.)

completed probation. (Tr. at 41.) However, the therapist opined that it was a "good practice" to incorporate such a safety plan into the custody order. *Id.* Thereafter, Father's counsel requested inclusion of a safety plan and Mother's attorney assured the trial court "there's a safety plan in place." (Tr. at 46.) As we observed during the prior appeal, "The trial court incorporated the safety plan devised by D.B.'s counselor and ordered Mother to follow such plan during her parenting time with Child." *In re T.A.*, slip op at 3. As such, the subsequent order's recognition of the ongoing safety plan was not erroneous.

## Conclusion

[12] The findings of the trial court upon remand were sufficient to permit appellate review. The trial court entered the requisite statutory finding of endangerment to support a restriction of Mother's parenting time. Mother cannot prevail on her argument that the trial court failed to comply with the order of remand.

[13] Affirmed.

Mathias, J., and Bradford, J., concur.