

FILED

Dec 11 2015, 8:35 am

CLERK
of the supreme court,
court of appeals and
tax court

ATTORNEY FOR APPELLANT

Adam C. Squiller
Squiller & Harley
Auburn, Indiana

ATTORNEYS FOR APPELLEE

Douglas E. Johnston
Angelica N. Fuelling
Tourkow, Crell, Rosenblatt & Johnston, LLP
Fort Wayne, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

Wayne Patton,

*Appellant-Respondent,*

v.

Jessica Patton,

*Appellee-Petitioner.*

December 11, 2015

Court of Appeals Case No.
17A04-1503-DR-137

Appeal from the DeKalb Superior Court
The Honorable Monte L. Brown, Judge

Cause No. 17D02-1107-DR-191

**Bradford, Judge.**

# Case Summary

[1] Appellant-Respondent Wayne Patton ("Father") and Appellee-Petitioner Jessica Patton ("Mother") were divorced in January of 2013. Mother was granted sole legal and physical custody of the couple's son W.P., born on February 9, 2007. Since 2011, Father's visitation with W.P. has been

supervised, and in 2012, Father was convicted of child seduction for fondling the breasts of his teenage daughter, who, incidentally, is now emancipated. In 2014, Father moved to modify parenting time with W.P. and child support, seeking to have the supervision requirement lifted and his support obligation reduced to reflect the fact that one of three children was now emancipated.

[2] Mother requested that a psychological evaluation of Father be performed, after which the evaluator found indications of defensiveness and poor judgment and decision-making. The evaluator also expressed doubts regarding Father's psychological functioning. Following a hearing, the trial court denied Father's motion for modification of visitation and child support obligation. Because we conclude that the trial court abused its discretion in refusing to alter Father's child support obligation, we affirm in part, reverse in part, and remand with instructions.

# Facts and Procedural History

[3] Father was born on May 24, 1972, and, at some point, married Mother, with whom he had three children—daughters Ja.P. and Ju.P. and son W.P., who was born on February 9, 2007. On July 19, 2011, Mother petitioned for the dissolution of her marriage to Father. In July of 2011, Father was granted supervised visitation with W.P. at the Children's First Center in Auburn. In 2012, Father was convicted of child seduction for fondling Ja.P.'s breasts when she was sixteen years old. Father was initially ordered to pay $207.00 per week

in child support, which was modified by order of the trial court to $160.00 per week on March 26, 2013.

[4] On July 3, 2014, Father petitioned for modification of visitation and child support, seeking removal of the supervision requirement and reduction of his support obligation. At some point, Mother requested a psychological evaluation for Father, which clinical and forensic psychologist Stephen Ross, Psy.D., performed. Dr. Ross interviewed Father and reviewed various documents regarding Father's supervised visitation with W.P., his placement on the Indiana Sex Offender Registry following his child seduction conviction, and copies of excerpts from comic books Father had given to W.P. during visitation. Dr. Ross also performed a battery of psychological tests on Father.

[5] On January 13, 2015, Dr. Ross issued his report. Dr. Ross noted that Father's "defensiveness" compromised the validity of some of the testing. Appellant's Addendum p. 5. Dr. Ross also considered the comics Father gave to W.P. to be inappropriate, depicting satanic-like figures and containing references to "'half naked pictures of Brittney Spears', and other sexually explicit references." Appellant's Addendum p. 6. Dr. Ross opined that he was "not so certain about [Father's] psychological functioning" and that if Father did, in fact, provide W.P. with the comic books in question, "this would be an indication of poor judgment and decision-making on his part." Appellant's Addendum p. 6. Dr. Ross explicitly endorsed neither unsupervised nor supervised visitation but did recommend that Father and W.P. meet with a professional counselor in the event the trial court ordered unsupervised visitation.

On January 14, 2015, the trial court held a hearing on Father's motions. At the hearing, Father argued, *inter alia*, that his child support obligation should be modified because Ja.P. was emancipated, which represented a substantial and continuing change in circumstances. Mother argued that although Ja.P. was legally emancipated, she was still living with Mother and was in college. On February 27, 2015, the trial court issued its order, which provided as follows:

## ORDER

On January 14, 2015, Petitioner, Jessica Patton, appeared in person and by counsel, Douglas E. Johnston, and Respondent, Wayne Patton, appeared in person and by counsel, Adam C. Squiller, for hearing on Respondent's Motion To Modify Parenting Time and Support filed July 3, 2014. The State of Indiana appeared by DeKalb County Deputy Prosecuting Attorney, Donald P. Shively. Hearing held and evidence received.

Based on the record of the proceeding, the Court now **FINDS, ORDERS, ADJUDGES, AND DECREES:**

1. That the parties herein were granted a Decree of Dissolution of Marriage on the 7th day of January, 2013.

2. That pursuant to said Decree, Petitioner was granted the sole legal and physical custody of the minor children and Respondent was granted parenting time with [W.P.] on a restricted and supervised basis through the Children's First Center, Auburn, Indiana.

3. That Respondent was Ordered to pay child support payments for and on behalf of the parties' minor children in the amount of $207.00 per week and weekly thereafter until further Order of the Court, which Order was modified to the sum of $160.00 per week on March 26, 2013.

4. That [Ja.P.] is 20 years old and is emancipated.

5. That Petitioner is gainfully employed earning approximately $440.00 per week.

6. That Respondent is employed at Courier, Kendallville, Indiana, earning $17.22 per hour working an average of 40 hours per week, for an average weekly gross income of $689.00.

7. That Respondent incurs $43.00 per week in healthcare insurance expense for the parties' minor children.

8. That the Court has completed and filed of record in this case a Child Support Obligation Worksheet according to the Indiana Child Support Guidelines [which indicates a recommended support obligation of $136.42].

9. That because the amount of support Ordered does **not** differ by more than 20% of the support presently calculated, no modification of support is Ordered.

10. That Respondent's Motion regarding Modification of Parenting Time applies only to [W.P.].

11. That Respondent's Evidence in Support of a Modification of Parenting Time concerning [W.P.] is largely based on the psychological evaluation and report associated therewith by Dr. Stephen Ross, introduced as Respondent's Exhibit A.

12. That having again carefully reviewed the report of Dr. Ross, the Court finds that it [is] neither an endorsement of unsupervised parenting time nor is it an endorsement of parenting time by Respondent according to the Indiana Parenting Time Guidelines.

13. That the Court having considered the evidence in this case, including the nature of the comic books given or otherwise made available by Respondent to [W.P.] which conduct the Court finds, as did Dr. Ross, indicates poor judgment and decision making on Respondent's part, and the lack of any degree of certainty associated with the report submitted by Dr. Ross regarding [W.P.]'s safety if

parenting time by Respondent is unsupervised, finds that
unrestricted and unsupervised parenting time may
endanger [W.P.]'s physical health and/or significantly
impair his emotional development. Accordingly, the
restriction and supervision of Respondent's parenting time
shall continue as previously Ordered.

14. That Petitioner consented and agreed to permit
Respondent's Mother (Mary Stockert) to act as the
supervisor of Respondent's parenting time with [W.P.],
provided she agrees.

15. That assuming Respondent's Mother agrees to supervise
said parenting time, at **all** times which parenting time shall
be exercised in the direct presence of Respondent's
Mother, the Court authorizes Respondent's Mother to act
as a supervisor for said parenting time. Provided,
however, said parenting time shall not include overnight
parenting time with [W.P.] until further Order of the Court
and shall occur not less often than one time per week for a
period up to 6 hours per day, the date and time to be
agreed upon by and between Petitioner and Respondent.

16. That in the event Mary Stockert is unable or unwilling to
provide the supervision required by this Order, said
parenting time shall be exercised through the Children's
First Center, at Respondent' s expense, or supervised by
such other person or agency as the parties may agree upon
from time to time.

17. That pursuant to paragraph 4 in the summary of Dr.
Ross's report, said unsupervised parenting time shall begin
only after Respondent and [W.P.] have jointly met with a
professional counselor and only then upon the written
recommendation of said counselor.

Appellant's App. pp. 8-11 (emphases in original).

# Discussion and Decision

# I. Visitation

Father contends that the trial court abused its discretion in denying his request for unsupervised visitation with W.P. "Indiana has long recognized that the rights of parents to visit their children is a precious privilege that should be enjoyed by noncustodial parents." *Duncan v. Duncan*, 843 N.E.2d 966, 969 (Ind. Ct. App. 2006) (citing *Lasater v. Lasater*, 809 N.E.2d 380, 400-01 (Ind. Ct. App. 2004)), *trans. denied*. "As a result a noncustodial parent is generally entitled to reasonable visitation rights." *Id.* (citing Ind. Code § 31-17-4-1). "A court may modify an order granting or denying visitation rights whenever this modification would serve the best interests of the child." *Id.* (citing Ind. Code § 31-17-4-2).

> When reviewing the trial court's resolution of the visitation issue, we reverse only when the trial court manifestly abused its discretion. *In re Marriage of Julien* (1979), Ind. App., 397 N.E.2d 651. If the record reveals a rational basis supporting the trial court's determination, no abuse of discretion occurred. *Carter v. Dec* (1985), Ind. App., 480 N.E.2d 564. We will not reweigh evidence or reassess the credibility of witnesses. *Id.*

*Pennington v. Pennington*, 596 N.E.2d 305, 306 (Ind. Ct. App. 1992), *trans. denied*.

Indiana Code section 31-17-4-2 provides that:

> The court may modify an order granting or denying parenting time rights whenever modification would serve the best interests of the child. However, the court shall not restrict a parent's parenting time rights unless the court finds that the parenting time might endanger the child's physical health or significantly impair the child's emotional development.

Despite the statute's use of the word "might," for over twenty-five years Indiana Courts have interpreted the statute to requires evidence that parenting time "'would' (not 'might') endanger or impair the physical or mental health of the child." *Perkinson v. Perkinson*, 989 N.E.2d 758, 763 (Ind. 2013) (quoting *Stewart v. Stewart*, 521 N.E.2d 956, 960 n.3 (Ind. Ct. App. 1988), *trans. denied*).

Here, as Father points out, the trial court indicated in its order that it had found "that unrestricted and unsupervised parenting time *may* endanger W.P.'s physical health and/or significantly impair his emotional development." (Emphasis added). Although Father argues that this is proof that the trial court applied the incorrect standard in evaluating his petition, we conclude that this does not establish the manifest abuse of discretion required to overturn the trial court's judgment.

The transcript of the hearing and the trial court's order indicates that the trial court carefully considered the record, including the report Dr. Ross prepared following his evaluation of Father. As mentioned, Dr. Ross noted Father's defensive attitude and continued refusal to take responsibility for the actions that led to his criminal conviction; expressed doubts regarding Father's psychological health and concern about the appropriateness of the comic books given to W.P.; and could not recommend unsupervised visitation. Dr. Ross concluded that the content in the comic books was inappropriate for a child of W.P.'s age, which the trial court agreed was a sign of poor judgment on Father's part. All in all, we conclude that the record was sufficient to sustain the trial court's decision not to immediately provide Father with unsupervised

visitation with W.P. and further indicates that the trial court found that unsupervised visitation at this point would endanger W.P.

[12] In any event, the trial court's order did provide immediate opportunities for more favorable visitation. Effective immediately and with Mother's consent, the trial court's order provides that Father's mother is an acceptable supervisor for Father's visitation with W.P. This would mean, *inter alia*, that visitation could occur someplace other than Children's First Center, providing flexibility and presumably saving Father money. Finally, the order outlined a mechanism through which Father could obtain the unsupervised visitation with W.P. that he seeks in this appeal, provided that the two attend joint counseling and obtain the counselor's written recommendation.

[13] Overall, we conclude that the trial court took a thoughtful approach to the visitation issue and has struck a balance that adequately addresses the concerns of all, while still providing Father with opportunities for more rewarding parenting time with W.P., immediately and in the future. Father has failed to establish a manifest abuse of discretion in this regard.

## II. Child Support

[14] Father also contends that the trial court abused its discretion in refusing to reduce his child support obligation from its current level of $160.00 per week.

> In reviewing a determination of whether child support should be modified, we will reverse the decision only for an abuse of discretion. *In re E.M.P.*, 722 N.E.2d 349, 351 (Ind. Ct. App. 2000). We review the evidence most favorable to the judgment without reweighing the evidence or reassessing the credibility of the witnesses. *Id.* An abuse of discretion occurs when the

decision is clearly against the logic and effect of the facts and circumstances before the court, including any reasonable inferences therefrom. *Id.*

*Cross v. Cross*, 891 N.E.2d 635, 641 (Ind. Ct. App. 2008).

[15] Indiana Code section 31-16-8-1 provides, in part, as follows:

(b) Except as provided in section 2 of this chapter, modification may be made only:

(1) upon a showing of changed circumstances so substantial and continuing as to make the terms unreasonable; or

(2) upon a showing that:

(A) a party has been ordered to pay an amount in child support that differs by more than twenty percent (20%) from the amount that would be ordered by applying the child support guidelines; and

(B) the order requested to be modified or revoked was issued at least twelve (12) months before the petition requesting modification was filed.

[16] Because the amount of child support ordered differs by less than 20% of the amount dictated by the Indiana Child Support Guidelines, Father is limited to arguing pursuant to subsection 1. *See MacLafferty v. MacLafferty*, 829 N.E.2d 938, 940 (Ind. 2005) ("While the statute presents alternative methods of seeking modification—compliance with Subsection (1) or, in the alternative, compliance with Subsection (2)—only Subsection (1) is available to Father here. This is because the amount that Father would be ordered to pay applying the Indiana Child Support Guidelines, Ind. Child–Support Guideline 3 (West 2003), differed by less than 20%[.]").

[17]     Father must establish that the trial court abused its discretion in refusing to find changed circumstances so substantial and continuing as to make his current obligation unreasonable. Under the circumstances of this case, we conclude that Father has established an abuse of discretion on the trial court's part. It is undisputed that Ja.P. is now emancipated, thereby terminating Father's support obligation. *See* Ind. Code § 31-16-6-6(a) ("The duty to support a child under this chapter, which does not include support for educational needs, ceases when the child becomes nineteen (19) years of age[.]"). Moreover, even assuming that Ja.P. is attending college, neither she nor Mother petitioned for educational support pursuant to Indiana Code section 31-16-6-6(d). *See id*. ("If a court has established a duty to support a child in a court order issued after June 30, 2012, the … parent or guardian of the child [or] child … may file a petition for educational needs until the child becomes nineteen (19) years of age."). In short, Father no longer has any support obligation to Ja.P.

[18]     The trial court appears not to have addressed Father's argument that Ja.P.'s emancipation was a substantial and continuing change, ordering only that the obligation may not be modified because it did not differ more than twenty percent from the guidelines. Although the trial court did not address the question, we have little trouble concluding that Ja.P.'s emancipation warrants a modification of Father's support obligation. Father's current obligation is based on support for three children, whereas he is now obligated to support only two. The Child Support Obligation Worksheet prepared for this case, based on Father's support of Ju.P. and W.P, and attached to the trial court's order,

recommends a support obligation of $136.42 per week. Mother does not argue that the recommended obligation is based on incorrect calculations or faulty assumptions, and we see no other reason to depart from it. Consequently, we remand with instructions to modify Father's child support obligation to $136.42 per week.

[19] The judgment of the trial court is affirmed in part and reversed in part, and we remand with instructions.

Baker, J., and Pyle, J., concur.