## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



**FILED**

Jul 17 2019, 10:27 am

**CLERK**
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Elizabeth A. Deckard
Bloom Gates Shipman & Whiteleather LLP
Columbia City, Indiana

ATTORNEY FOR APPELLEE

Nicholas J. Hursh
Shambaugh, Kast, Beck & Williams, LLP
Fort Wayne, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| In re:  The Marriage of: | July 17, 2019 |
| Ashlee Alexa Trammel, | Court of Appeals Case No. 18A-DR-3153 |
| *Appellant-Petitioner,* | Appeal from the DeKalb Superior Court |
| v. | The Honorable Monte L. Brown, Judge |
| Jeffery S. Trammel, | |
| *Appellee-Respondent.* | Trial Court Cause No. 17D02-1611-DR-260 |

**Bradford, Judge.**

# Case Summary

Ashlee A. Trammel ("Mother") and Jeffery S. Trammel ("Father") were married and are the parents of five children. Their divorce was finalized in December of 2014. In February of 2015, Mother filed a request to relocate with the children to North Carolina. Father objected to and, on July 8, 2015, the trial court denied, Mother's request. Mother subsequently filed a petition to modify custody and Father sought a modification of Mother's child support obligation. The trial court conducted a two-day evidentiary hearing on those and other pending motions on March 14 and 15, 2018, after which it denied Mother's petition for a custody modification; found Mother in contempt of the court's July 8, 2015 order; modified Mother's child support obligation; and ordered Mother to pay $10,750.00 of Father's attorney's fees. Mother's subsequent motion to correct error was denied. On appeal, we conclude that the trial court abused its discretion in finding Mother in contempt of the July 8, 2015 order and in modifying Mother's child support obligation. Given these conclusions, we further conclude that the trial court's order awarding Father $10,750.00 in attorney's fees must be remanded for further consideration as to whether an award of attorney's fees is appropriate. We affirm the trial court in all other respects.

# Facts and Procedural History

Mother and Father were married on October 3, 1998. Five children were born during their marriage: P.T., born June 24, 2000; G.T., born October 6, 2001;

R.T., born December 29, 2004; K.T., born November 11, 2006; and T.T., born May 23, 2008 (collectively, "the Children"). On March 3, Mother filed a petition to dissolve the parties' marriage.[1] Mother and Father entered into a settlement agreement on December 22, 2014. On December 23, 2014, the trial court issued an order approving the parties' settlement agreement and an addendum thereto and dissolving the parties' marriage.

[3] On February 26, 2015, Mother filed a petition seeking permission to relocate with the Children to North Carolina. Father objected to Mother's request. On July 8, 2015, the trial court denied Mother's relocation request. In doing so, the trial court stated:

> The Court cannot find how this move represents a single benefit to the children. Mother's entire plan is based upon her relationship with Mr. Reep,[2] whom she has known for less than a year. The children have only met Mr. Reep a handful of times and have, based upon testimony, only met his children once. To force the children to move over 500 miles away from their father into a home they have not seen and live with people whom they barely know is not only not a benefit to the children, it represents an incredibly stressful situation for them at a time when they are only recently dealing with the divorce of their parents, moving from the marital residence and leaving their home school environment for a traditional school environment. The Court finds that Mother's actions are not only not in the best interest of

---

[1] This case was originally filed in Whitley Superior Court. On April 14, 2016, Mother requested a change of judge. The Honorable Monte L. Brown was appointed as Special Judge on May 23, 2016. The matter was subsequently re-docketed in the DeKalb Superior Court with Judge Brown remaining as the presiding judge.

[2] At some point, Mother entered into a relationship with Michael Reep. She subsequently married Reep and resides with him in Asheville, North Carolina.

the children, her actions are selfish, shortsighted and motivated solely by her desire to maintain a relationship with Mr. Reep.

Appellant's App. Vol. II p. 50. The trial court ordered that "Mother shall be the non-custodial parent entitled to parenting time with said children pursuant to the Indiana Parenting Time Guidelines when Distance is a Major Factor. All costs associated with Mother's exercise of parenting time or parenting time exchanges are assigned to Mother." Appellant's App. Vol. II p. 51. We subsequently affirmed the trial court's denial of Mother's request to relocate the Children. *See Trammel v. Trammel*, 92A04-1507-DR-933 *3–4 (Ind. Ct. App. Jan. 13, 2016).

[4] Father filed motions for a rule to show cause why Mother should not be held in contempt of the trial court's prior orders in February and March of 2016. On April 4, 2016, Mother filed a number of motions and a petition to modify custody. These motions, among others, remained pending on March 14 and 15, 2018, when the trial court conducted a two-day evidentiary hearing.[3] On the first day of the hearing, Mother requested that the trial court conduct in camera interviews of the Children. The trial court denied Mother's request after hearing all of the parties' evidence, noting that he did not believe the Children would provide any additional helpful information.

---

[3] The parties filed a number of other motions in the time that passed between April of 2016 and March of 2018. All of these additional pending motions were resolved in the trial court's June 20, 2018 order.

The trial court issued its order on all pending motions on June 20, 2018. In this order, the trial court denied Mother's petition for a custody modification, finding that Mother failed to establish that modification of custody would be in the Children's best interests. The trial court also found that the circumstances warranted a change in Mother's child support obligation and that Mother was in contempt of the July 8, 2015 order. In finding Mother in contempt of the July 8, 2015 order, the trial court stated the following:

> c. [Father] has established that since the July 8, 2015 Order, [Mother] has been in direct contempt of the Court's Orders when exercising some of her liberal parenting time in removing the children out of the State of Indiana and area of the children's residence in Fort Wayne, IN. Liberal visitation when Petitioner is "in the area where the children reside" as provided by Section III(5) of the Indiana Parenting Time Guidelines does not mean [Mother] can then take the children to North Carolina or Wisconsin, etc., after picking them up in Indiana.
>
> d. [Mother's] disregard/violation of the Parenting Time Guidelines was knowing, willful, intentional, and in contemptuous disregard of the Court's Order.
>
> e. For punishment, [Mother] shall be incarcerated in the DeKalb County Jail for 30 days and the imposition of said punishment is held in abeyance and she is given the opportunity to purge herself of said contempt by strict compliance with the Court's Orders regarding parenting time with the children.

Appellant's App. Vol. II pp. 61–62. The trial court also ordered Mother to pay $10,750.00 of Father's attorney's fees.

# Discussion and Decision

[6] Mother raises numerous challenges on appeal. First, she contends that the trial court abused its discretion in finding her in contempt of the July 8, 2015 custody order. Mother also contends that the trial court abused its discretion in modifying her child support obligation, failing to consider the Children's wishes, restricting her parenting time, and ordering her to pay $10,750.00 of Father's attorney's fees.

# I. Contempt

[7] Mother contends that the trial court abused its discretion in finding her in contempt of the July 8, 2015 custody order. The Indiana Parenting Time Guidelines provide that court orders regarding parenting time "must be followed by both parents." Ind. Parenting Time Guidelines, Sec. I(E)(6)(A). A party that commits unjustified violations of or is willfully disobedient to a court's order may be held in contempt of court. *Clary-Ghosh v. Ghosh*, 26 N.E.3d 986, 993 (Ind. Ct. App. 2015); Par. Time G., Sec. I(E)(6)(A). Contempt sanctions "may include fine, imprisonment, and/or community service." Par. Time G., Sec. I(E)(6)(A). A party, however, "may not be held in contempt for failing to comply with an ambiguous or indefinite order." *In re Paternity of P.B.*, 932 N.E.2d 712, 723 (Ind. Ct. App. 2010) (internal quotation omitted).

[8] Whether a person is in contempt of a court order rests within the trial court's discretion, and we review the trial court's finding for an abuse of discretion. An abuse of discretion occurs only when the trial court's decision is against the logic and effect of the facts

and circumstances before the trial court. We do not reweigh the evidence or judge the credibility of witnesses, and we will affirm the trial court's contempt finding unless review of the record leaves us with a firm and definite belief that a mistake has been made.

*Ghosh*, 26 N.E.3d at 993 (internal citations and quotations omitted).

[9] "Where there is a significant geographical distance between the parents, scheduling parenting time is fact sensitive and requires consideration of many factors which include: employment schedules, the costs and time of travel, the financial situation of each parent, the frequency of the parenting time and others." Par. Time G., Sec. III. In the July 8, 2015 order, the trial court ordered that Mother "shall be the non-custodial parent entitled to parenting time with said children pursuant to the Indiana Parenting Time Guidelines when Distance is a Major Factor." Appellant's App. Vol. II p. 51. In addition to setting forth a basic schedule for parenting time for the non-custodial parent, the Guidelines provide that "[w]hen the non-custodial parent is in the area where the child resides, or when the child is in the area where the non-custodial parent resides, liberal parenting time shall be allowed. The parents shall provide notice to each other, as far in advance as possible, of such parenting opportunities." Par. Time G., Sec. III(5).

[10] Again, in finding Mother in contempt of the July 8, 2015 order, the trial court stated the following:

> c. [Father] has established that since the July 8, 2015 Order, [Mother] has been in direct contempt of the Court's Orders when

exercising some of her liberal parenting time in removing the children out of the State of Indiana and area of the children's residence in Fort Wayne, IN. Liberal visitation when Petitioner is "in the area where the children reside" as provided by Section III(5) of the Indiana Parenting Time Guidelines does not mean [Mother] can then take the children to North Carolina or Wisconsin, etc., after picking them up in Indiana.

d. [Mother's] disregard/violation of the Parenting Time Guidelines was knowing, willful, intentional, and in contemptuous disregard of the Court's Order.

Appellant's App. Vol. II pp. 61–62. Mother challenges the trial court's finding, arguing that the trial court abused its discretion in finding her in contempt because the July 8, 2015 order was ambiguous with regard to whether she could take the Children out of Northeast Indiana while exercising liberal parenting time.

[11] After reviewing both the July 8, 2015 order and the applicable portion of the Parenting Time Guidelines, we must agree with Mother. The Parenting Time Guidelines provide that a non-custodial parent shall be granted liberal parenting time when in the area where the children reside or when the children are in the area where the non-custodial parent resides. While one could certainly read the Parenting Time Guidelines as providing that liberal parenting time should only be exercised in these areas, the Parenting Time Guidelines do not include a geographical limitation on where the parenting time must be exercised. Stated differently, the Parenting Time Guidelines do not explicitly state that a non-custodial parent may not remove the children from the area where they reside

while exercising this additional parenting time.  Likewise, the July 8, 2015 order contained no such geographic restriction.  As such, we conclude that the trial court abused its discretion in finding Mother in contempt of an ambiguous order.[4]  *See In re Paternity of P.B.*, 932 N.E.2d at 723.

## II.  Modification of Mother's Child Support Obligation

[12]   Mother next contends that the trial court abused its discretion in modifying her child support obligation.

> Decisions regarding child support rest within the sound discretion of the trial court.  Thus, we reverse child support determinations only if the trial court abused its discretion or made a determination that is contrary to law.  A trial court has the discretionary power to make a modification for child support relate back to the date the petition to modify is filed, or any date thereafter.  A retroactive modification of support is erroneous only if the modification purports to relate back to a date earlier than that of the petition to modify.  This rule serves to avoid encouragement of dilatory tactics and further the purposes of the changed circumstances rule.

*Taylor v. Taylor*, 42 N.E.3d 981, 986 (Ind. Ct. App. 2015) (footnote and internal citation and quotations omitted).  In challenging the modification of her child

---

[4] We acknowledge that Father points to other allegedly contemptuous actions committed by Mother in support of his claim that the trial court acted within its discretion by finding Mother in contempt of the July 8, 2015 order.  However, given that the trial court listed only one reason why it found Mother in contempt, we will limit our review of the propriety of the trial court's contempt finding to the reason stated by the trial court.

support obligation, Mother raises a number of claimed errors. We will discuss each in turn.

## A.  Imputation of Income to Mother

[13] Mother claims that the trial court erroneously imputed income to her in the amount of $750 per week. In making this claim, Mother suggests that the trial court imputed income to her based on her current spouse's income without considering her "historical expenses, her current expenses, and to what extent her current spouse is paying her expenses on her behalf." Appellant's App. Br. p. 27. Mother cites to our opinion in *Payton v. Payton*, 847 N.E.2d 251, 253 (Ind. Ct. App. 2006), for the proposition that "[c]hild support awards under the [Child Support] Guidelines are designed to provide the children as closely as possible with the same standard of living they would have enjoyed had the marriage not been dissolved." Thus, Mother asserts that the trial court erred by imputing income to her because she "was a stay-at-home parent for [fifteen] years. The children would have had no access to any income from Mother had the parties remained married. That is unchanged as of the hearing, putting the children in the exact same position they would have been had Mother and Father not dissolved their marriage." Appellant's Br. p. 27.

[14] For purposes of the Child Support Guidelines, "'weekly gross income' is defined as actual weekly gross income of the parent if employed to full capacity, potential income if unemployed or underemployed, and imputed income based on 'in-kind' benefits." Ind. Child Support Guideline 3(A)(1).

Potential income may be determined if a parent has no income, or only means-tested income, and is capable of earning income or capable of earning more. Obviously, a great deal of discretion will have to be used in this determination. One purpose of potential income is to discourage a parent from taking a lower paying job to avoid the payment of significant support. Another purpose is to fairly allocate the support obligation when one parent remarries and, because of the income of the new spouse, chooses not to be employed.

Child Supp. G. 3, Cmt. (2)(c).

When a parent has some history of working and is capable of entering the work force, but without just cause voluntarily fails or refuses to work or to be employed in a capacity in keeping with his or her capabilities, such a parent's potential income shall be included in the gross income of that parent. The amount to be attributed as potential income in such a case may be the amount that the evidence demonstrates he or she was capable of earning in the past…. Discretion must be exercised on an individual case basis to determine whether under the circumstances there is just cause to attribute potential income to a particular unemployed or underemployed parent.

Child Supp. G. 3, Cmt. (2)(c)(2).

Whether or not income should be imputed to a parent whose living expenses have been substantially reduced due to financial resources other than the parent's own earning capabilities is also a fact-sensitive situation requiring careful consideration of the evidence in each case…. If there were specific living expenses being paid by a parent which are now being regularly and continually paid by that parent's current spouse or a third party, the assumed expenses may be considered imputed income to the parent receiving the benefit. The marriage of a parent to a spouse

with sufficient affluence to obviate the necessity for the parent to work may give rise to a situation where either potential income or imputed income or both should be considered in arriving at gross income.

Child Supp. G. 3, Cmt. (2)(d).

[15] The record reveals that although Mother may not have had a job during the parties' marriage, she did work following the parties' divorce and one of her claimed reasons for moving to North Carolina was better job opportunities. Her highest salary upon returning to work was $29,120. This number is reflected in the $560 weekly gross income from the July 8, 2015 order. It would have been within the trial court's discretion to attribute this potential income to Mother in the current order. Any amount beyond this, however, would have to be justified by evidence that Mother is capable of earning more income and/or evidence that Reep, her current husband, has made "regular and continuing payments" that reduce her costs for "rent, utilities, … groceries," or other "specific living expenses[.]" Ind. Child Support Guideline 3A, cmt. 2d; *see In re Paternity of C.B.*, 112 N.E.3d 746, 761 (Ind. Ct. App. 2018) (affirming the decision not to impute income to mother where father failed to carry the burden of presenting evidence regarding value of living expenses allegedly paid by her parents), *trans. denied* (2019). With the exception of testimony and exhibits regarding visitation-related travel expenses,[5] the record is devoid of such

---

[5] Mother presented evidence that she has spent approximately $20,000 per year on visitation-related travel expenses, and Reep testified that he has "paid for much of that[.]" Tr. Vol. 2 at 220.

evidence. The mere fact that Reep earns nearly $300,000 annually and that Mother has access to one of his bank accounts[6] is an insufficient basis for imputing $750 in weekly gross income to Mother. We therefore conclude that the trial court abused its discretion in imputing $750 in income to Mother. On remand, we instruct the trial court to impute income to Mother in an amount supported by the evidence.

## B. Father's Income

Mother also claims that the trial court erred in using Father's 2016 income to calculate child support income rather than using his 2017 income. Mother does not cite to any authority in support of this claim and neither party develops this argument further. We have previously concluded that the calculation of the amount of child support is determined in light of the circumstances of each case. *See generally Matter of Paternity of A.J.R.*, 702 N.E.2d 355, 361 (Ind. Ct. App. 1998) (providing that the amount of support, including retroactive support, is determined in light of the circumstances of each case).

The trial court's order was applied retroactively to April 8, 2016. The record reveals that in 2016, Father earned $865.00 per week. His income increased to $1018.00 per week in 2017. Upon reviewing the facts of this case, the trial court appears to have concluded that Father proved that deviation of the general

---

[6] In fact, Reep testified that he "took [Mother's] name off a bank account" because Father was "trying to come after [his] assets." Tr. Vol. 2 at 225.

practice of using a parent's current income was warranted when it used Father's 2016 income to calculate Mother's modified child support obligation. "The determination of child support is committed to the trial court's sound discretion and will not be overturned unless clearly erroneous." *Id.* at 359. Mother has failed to convince us that the trial court's decision to use Father's 2016 income when modifying her child support obligation was clearly erroneous. As such, we cannot say that the trial court abused its discretion in this regard.

## C. Overnight Visitation Credit

[18] Mother claims that the trial court erred by giving her credit for only ninety-eight overnight visits, asserting that the credit effectively amounted to a retroactive reduction. Noting that the trial court's order was retroactive to April 8, 2016, Mother argues that through her liberal visitation with the Children, she exercised far more than the ninety-eight overnight visits provided for in the parenting time schedule. Specifically, she argues that she should have been granted additional credit for overnight visits given that she exercised 132 overnight visits in 2016 and 131 overnight visits in 2017.

[19] The Indiana Supreme Court has held that parenting time credit for overnight visits is not mandatory. *Bogner v. Bogner*, 29 N.E.3d 733, 743 (Ind. 2015). As such, the trial court is not required to award parenting time credits based on overnight visits. *Id.* The trial court's order appears to credit Mother only for the nights she was awarded court-ordered parenting time and does not appear to include any additional nights that Children spent with Mother while Mother was exercising liberal parenting time. Given that it is undisputed that Mother

exercised 130-plus overnights in 2016 and 2017, we conclude that the trial court abused its discretion by failing to award Mother credit for the additional nights beyond the ninety-eight included in the trial court's order.

## D. Employer HSA Contributions

[20] Mother additional claims that the trial court erred by failing to require Father to exhaust his employer contributions to his Health Savings Account ("HSA"), as was required by the parties' divorce agreement. Specifically, Mother asserts that "[t]hese funds should be included in the child support calculation as it is money Father has … access to in support of the children." Appellant's Br. p. 27. Because "items received by the obligor that reduce his or her living expenses" may be used in calculating weekly gross income, *see* Ind. Child Support Guideline 3A, cmt. 2, we conclude that the trial court should have considered Father's HSA contributions when determining Father's income.

## III. Children's Wishes

[21] Mother next contends that the trial court abused its discretion by failing to consider the Children's wishes before denying her April 4, 2016 petition for a custody modification. We review issues relating to the trial court's denial of Mother's petition to modify custody "for an abuse of discretion, because we give wide latitude to our trial court judges in family law matters." *In re Paternity of J.T.*, 988 N.E.2d 398, 399 (Ind. Ct. App. 2013). Mother, as the party requesting a modification of custody, had the burden to demonstrate that the existing custody arrangement needed to be altered. *Id.*

[22]     In support of her claim that the trial court failed to consider the Children's wishes regarding custody, Mother points to the trial court's denial of her request that the trial court conduct in camera interviews of the Children. The trial court waited until the close of evidence to decide whether to grant Mother's request. In arguing in favor of the trial court conducting the interviews, Mother indicated that the interviews could potentially "clear up" any questions that the trial court may still have about Mother's request for a modification of custody. Tr. Vol. III p. 127. Father objected to mother's request, indicating that he believed the trial court "has sufficient evidence before it, uh, without the need to involve" the Children, especially the three youngest Children. Tr. Vol. III p. 127. The trial court denied Mother's request, stating:

> based upon what I've heard, I do not think that the children are going to be able to provide me with any information that I would find helpful or useful in making the determination I have to make. So I am going to overrule and deny the motion for in-camera interview of the children.

Tr. Vol. III p. 128.

[23]     Indiana Code section 31-17-2-9 provides that a trial court *may* interview a child in chambers to ascertain the child's wishes. "[T]he decision concerning whether to conduct an in camera interview is within the trial court's discretion." *Cunningham v. Cunningham*, 787 N.E.2d 930, 937 (Ind. Ct. App. 2003). Mother has failed to convince us that the trial court's denial of her request for it to conduct in camera interviews of the Children amounted to an abuse of its discretion.

[24]     Furthermore, the record reflects that while the trial court did not conduct in camera interviews of the youngest four children, the parties' oldest child, P.T., testified during the evidentiary hearing about her wishes, observations, and what she believed would be in the best interests of her younger siblings. She indicated that because she helps care for her younger siblings, she is concerned that her siblings may become "harder [for Father] to manage" once she moves out of Father's home for college. Tr. Vol. III p. 20. P.T. also indicated that she felt it might be beneficial for her younger sisters, K.T. and T.T., to live with Mother "to work through those things that girls normally go with, go through." Tr. Vol. III p. 21. P.T. further emphasized, however, that she felt it was important for all of her siblings to maximize time spent and to maintain a strong relationship with both of their parents.

[25]     Mother suggests that the trial court must not have considered the wishes of the Children because it failed to specifically list whether it found this factor relevant in denying her petition to modify custody. However, absent a request for special findings, which was not made in this case, the trial court was not required to do so. *See In re Paternity of J.T.*, 988 N.E.2d at 400 ("[A] trial court is not, absent a request by a party, required to make special findings regarding the continuing and substantial changes in the parties' circumstances."). Mother has failed to prove that the trial court failed to consider the wishes of the Children, much less that it abused its discretion in doing so.

# IV. Restriction of Mother's Parenting Time

[26] Mother contends that the trial court abused its discretion by restricting her parenting time with the Children. "Indiana has long recognized that the rights of parents to visit their children is a precious privilege that should be enjoyed by noncustodial parents." *Patton v. Patton*, 48 N.E.3d 17, 21 (Ind. Ct. App. 2015) (internal quotation and citation omitted). "As a result a noncustodial parent is generally entitled to reasonable visitation rights." *Id.* (internal quotation and citation omitted).

> The court may modify an order granting or denying parenting time rights whenever modification would serve the best interests of the child. However, the court shall not restrict a parent's parenting time rights unless the court finds that the parenting time might endanger the child's physical health or significantly impair the child's emotional development.

Ind. Code Ann. § 31-17-4-2. However, we have previously concluded that a finding regarding endangerment or impairment is not necessary when "the parenting time modifications [are] consistent with the Parenting Time Guidelines." *Ghosh*, 26 N.E.3d at 991. In such cases, the trial court may modify an award of parenting time if it serves the child's best interests. *Id.* We review decisions regarding the modification of parenting time for an abuse of discretion. *Patton*, 48 N.E.3d at 21.

[27] With regard to Mother's parenting time, the trial court ordered as follows:

> f. In order to avoid future issues with parenting time and clarifying [Mother's] parenting time with the children consistent

with the July 8, 2015 Order and [Mother's] history of exercising liberal parenting time, [Mother's] parenting time shall be Ordered and interpreted as follows:

    i. Seven (7) weeks of the school summer vacation period;

    ii. Seven (7) days of the school winter vacation;

    iii. Entire spring break, including both weekends if applicable; and

    iv. Special Notice of Availability to exercise up to seven (7) days per month within Northeast Indiana for liberal parenting time in any month that does _not_ include Holidays or Special Days for [Father] or months that [Mother] is already exercising time with the children for summer, winter vacation, or Spring Break. [Mother] shall provide notice to [Father], as far in advance as possible and no less than fifteen days in advance, of said liberal parenting time.

Appellant's App. Vol. II p. 62 (emphasis and underlining in original). The trial court's order did not alter the prior specific award of parenting time. Mother's parenting time remains consistent with the Parenting Time Guidelines and Mother continues to have the opportunity to exercise liberal parenting time with the Children.[7] As is evidenced by the contempt proceedings, Mother's exercising of liberal parenting time had become a source of conflict between her and Father. In issuing this order, the trial court appears to have attempted to

---

[7] Mother claims in her Reply Brief that the trial court's order will reduce the number of overnight visits from approximately 130 to approximately seventy to seventy-eight nights. However, despite Mother's claim, the trial court's order, consistent with the Parenting Time Guidelines, awards Mother ninety-eight overnight visits as well as provides her with the opportunity to exercise additional overnight visits through liberal parenting time.

clarify its previous order and minimize conflict between the parties by providing details relating to when and where Mother may exercise liberal parenting time. Minimization of conflict between Mother and Father is in the Children's best interests. *See Ghosh*, 26 N.E.3d at 991 (providing that a modification of the prior parenting time order that was intended to reduce conflict between parents was in the child's best interests). Mother, therefore, has failed to establish that the trial court abused its discretion in clarifying when and where she may exercise liberal parenting time with the Children.

# V.  Order to Pay Father's Attorney's Fees

[28]    Mother also contends that the trial court abused its discretion in ordering her to pay $10,750.00 of Father's attorney's fees. Indiana Code section 31-16-11-1(a) provides:

> The court periodically may order a party to pay a reasonable amount for:
> > (1) the cost to the other party of maintaining or defending any proceeding…;
> > (2) attorney's fees; and
> > (3) mediation services;
> including amounts for legal services provided and costs incurred before the commencement of the proceedings or after entry of judgment.

An award of attorney's fees in child support matters is discretionary. *Whited v. Whited*, 859 N.E.2d 657, 665 (Ind. 2007).

[29]    A determination regarding attorney fees in proceedings to modify a child support award is within the sound discretion of the trial

court and will be reversed only upon a showing of a clear abuse of that discretion. In determining whether to award attorney fees, the trial court must consider the parties' resources, their economic condition, their ability to engage in gainful employment, and other factors that bear on the award's reasonableness. The trial court may also consider any misconduct on the part of either of the parties that creates additional legal expenses not otherwise anticipated.

*Martinez v. Deeter*, 968 N.E.2d 799, 810 (Ind. Ct. App. 2012) (internal citations omitted). "Consideration of these factors promotes the legislative purpose behind the award of attorney fees, which is to insure that a party in a dissolution proceeding, who would not otherwise be able to afford an attorney, is able to retain representation." *Goodman v. Goodman*, 94 N.E.3d 733, 751 (Ind. Ct. App. 2018), *trans. denied*. Where "one party is in a superior position to pay fees over the other party, an award of attorney fees is proper." *Id.* (internal quotation omitted). The trial court "need not cite the reasons for its determination." *Whited*, 859 N.E.2d at 665.

[30] In awarding Father attorney's fees, the trial court found that Father was "the prevailing party in procedural requests and Motions brought before the Court by" the parties. Appellant's App. Vol. II p. 69. Given our conclusion that the trial court abused its discretion in finding Mother in contempt, Father is no longer the prevailing party on each of the requests and motions brought before the trial court. As such, we conclude that the trial court's order awarding Father $10,750.00 in attorney's fees must be remanded to the trial court for further consideration as to whether an award of attorney's fees is appropriate.

# Conclusion

[31] In sum, we affirm the trial court on all aspects except for its contempt finding, the modification of Mother's child support obligation, and the award of attorney's fees. Given that we believe the trial court's July 8, 2015 order and the Parenting Time Guidelines were ambiguous as to whether Mother was required to keep the Children in Northeast Indiana while exercising liberal parenting time, we reverse the trial court's order finding Mother in contempt. We also remand to the trial court with instructions to modify Mother's child support obligation to an amount supported by the evidence[8] and to reconsider whether an award of attorney's fees is appropriate.

[32] The judgment of the trial court is affirmed in part, reversed in part, and remanded for further proceedings consistent with this memorandum decision.

Crone, J., and Tavitas, J., concur.

---

[8] On remand, the trial court should consider the parties' current financial situations and set Mother's child support obligation accordingly.